ARJAY ASSOCIATES, INC., Intec Sales Company, Inc., Johnson Plastics Equipment, Pinnacle Sales Company, Free Energy, Pro Plastics Equipment, Inc., Sunbelt Plastics Machinery Co., Boston Plastics Machinery Co., and Aqua Poly Equipment Company, Plaintiffs,

v.

Ronald REAGAN, President, and the United States of America, Toshiba Machine Company, and Toshiba Machine Co. America, Defendants.

No. 88–11–00845.

United States Court of International Trade.

Feb. 21, 1989.

Santora & McKay (Robert McKay and John Carney), New York City, for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C. (Velta A. Melnbrencis New York City, on the brief), for defendants.

Marks, Murase & White, (Ramon Marks and Lance Gotthoffer), New York City, for Toshiba Machine Co. and Toshiba Machine Co. America.

Robert E. Branand International (Robert E. Branand) for Amicus Curiae.

## OPINION

MUSGRAVE, Judge:

In this matter, plaintiffs and cross-claimant Toshiba America, and defendants the U.S. Government and the President of the United States, raise grave questions of the constitutionality of an Act of Congress, of irremediable economic harm, and of national security. Plaintiffs and cross-claimant assert that § 2443 of the Omnibus Trade and Competitiveness Act of 1988 (Pub.L. 100–418) is unconstitutional as a proscribed Bill of Attainder. Defendants argue that Congress is empowered under Article I, Section 8 to unfettered discretion in the regulation of trade with foreign nations. While these averments raise interesting and indeed profound questions of constitutional law, this Court is constrained to avoid those issues if the case can be decided on more narrow grounds.

It can be so decided. The Court finds, for reasons set forth below, that neither the American plaintiffs nor Toshiba America, cross-claimant, have standing to maintain this suit. Accordingly, defendant's Motion to Dismiss is granted, and plaintiff's and cross-claimant's Motion for Injunctive and Other Relief is denied.

## BACKGROUND

Section 2443 of the Omnibus Trade Bill, entitled "Mandatory Sanctions Against Toshiba and Kongsberg", was enacted in response to sales by Toshiba Machine Co., Ltd. (Japan) and Kongsberg (a Norwegian corporation—not a party here) of technologically advanced milling machines and computer equipment to the Soviet Union. These milling machines were included on the list of controlled items of the Coordinating Committee for Multilateral Export Controls (COCOM)[1]. The machines purportedly enable the Soviets to manufacture propellers which will enable their submarine fleet to operate much more quietly than previously. This in turn is said to seriously compromise the ability of the United States, and its allies, to detect and track those submarines, thus threatening the national security of the U.S. and the Western alliance.

Plaintiffs are manufacturers representatives[2] of Toshiba Machine Co. They allege that as a consequence of the enaction of § 2443, orders for Toshiba products have fallen dramatically and that they will suffer irreparable harm as a result of the sanctions.

Section 2443, provides in pertinent part that:

The President shall impose, for a period of three years—

(1) a prohibition on contracting with, and procurement of products and services from—

(A) Toshiba Machine Company ...

\* \* \* \* \* \*

by any department, agency, or instrumentality of the United States Government; and

(2) a prohibition on the importation into the United States of all products produced by Toshiba Machine Company ...

On December 27, 1988 the President issued Executive Order 12661 delegating the implementation of the import ban of products manufactured by Toshiba Machine Company Ltd., Japan to the Secretary of the Treasury. On January 31, 1989 the Department of Treasury issued regulations implementing the import sanctions. 12 C.F.R. § 12.142(a); 54 Fed.Reg. 4780–82.

## DISCUSSION

The threshold question of jurisdiction is resolved affirmatively; the Court has jurisdiction under 28 U.S.C. § 1581(i)(3).

The next query is whether plaintiffs have standing to bring the present action. Plaintiffs and cross-claimant claim standing to institute this action under 28 U.S.C. § 2631(i), which provides that:

Any civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsection (a)–(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of Title 5.[3]

Given the issuance of the Treasury regulations on January 31, 1989, it is clear that an agency action has taken place. Furthermore, plaintiffs and cross-claimant have sufficiently alleged that they were "adversely affected" or "aggrieved" by that agency action.

However, the fact that plaintiffs Arjay et al. and cross-claimant Toshiba America are properly before the Court pursuant to 2631(i) does not end the inquiries regarding the issue of standing.

---

1. The purpose of COCOM is to prevent the acquisition of certain western technology by the Soviet Union and its allies. To this end COCOM maintains a list of items, the sale of which its members agree will be restricted and controlled.

2. A manufacturers representative is a business entity or individual who acts as an intermediary in issuing sales to customers of goods produced by the manufacturer or distributor whom he represents.

3. 5 U.S.C. § 702 provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

The Supreme Court has recognized that "[g]eneralizations about standing to sue are largely worthless as such." *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Nonetheless the Court set out a two-stage test which must be met in order to fulfill the constitutional requirements of standing. The first question is whether the plaintiff alleges that the challenged action has caused him injury in fact. *Id.* 397 U.S. at 152, 90 S.Ct. at 829. The second question is whether the interest sought to be protected is arguably within the zone of interest to be protected by the statute or constitutional guarantee in question. *Id.* at 153, 90 S.Ct. at 830.

In addition to the constitutional prerequisites for standing there are prudential considerations as well; that is, whether plaintiffs "are proper proponents of the particular legal rights on which they base their suit." *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). Normally, one who properly invokes the jurisdiction of a federal court "has standing to seek redress for injuries done to him, but may not seek redress for injuries to others." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166, 92 S.Ct. 1965, 1967, 32 L.Ed.2d 627 (1972). *See Also Warth v. Seldin*, 422 U.S. 490–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties). The reason for this restraint on the part of the judiciary is twofold. First, the courts should not adjudicate such rights unnecessarily (as it may be, in fact, that the holders of those rights do not wish to assert them). *Singleton v. Wulff, supra* 428 U.S. at 113, 114, 96 S.Ct. at 2873, 2874. Second, third parties are usually the best proponents of their own rights. *Id.* at 114, 96 S.Ct. at 2873.

Despite this prudential limitation the Supreme Court has recognized the standing of certain plaintiffs in cases in which the rights asserted were based at least partly upon the rights of third parties. In *Singleton* the Court set out two factual elements which must be examined before this can be done. The first is the relationship of the litigant to the person whose right is being asserted. *Singleton* at 113, 96 S.Ct. at 2873. Where the right of the third party is inextricably bound up with the activity which the plaintiff wishes to pursue the Court is assured that in considering the claimed right it is not doing so unnecessarily, and furthermore, that the plaintiff is likely to be as effective a proponent of the right as would be the third party himself. The second element to consider is the ability of the third party to assert his own right. "Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply," *unless there is some genuine obstacle to such assertion. Id.* at 116, 96 S.Ct. at 2875.

Turning first to plaintiff's primary argument, that § 2443 is a Bill of Attainder, the Court finds that plaintiffs and cross-claimant lack standing to raise this claim. Plaintiffs and cross-claimant have satisfied the first element required for standing as they have alleged that the challenged action has caused them injury in fact. And while this may be questionable as to plaintiff Arjay *et al.*, it seems clear that cross-claimant has sufficiently alleged such injury. *See Data Processing, supra.* Plaintiffs and cross-claimant both fail, however, the second part of the test set out in *Data Processing*, as the interest sought to be protected is not within the zone of interest to be protected by the constitutional guarantee in question.

The constitutional proscription against Bills of Attainder is found in Art. 1, § 9, Cl. 3:

No Bill of Attainder or *ex post facto* law shall be passed.

A Bill of Attainder has been defined by the Supreme Court as a law that legislatively determines guilt and inflicts punishment *upon an identifiable individual* without provision of the protections of a judicial trial. *See United States v. Brown*, 381 U.S. 437, 445, 85 S.Ct. 1707, 1713, 14 L.Ed. 2d 484 (1965); *United States v. Lovett*, 328 U.S. 303, 315–16, 66 S.Ct. 1073, 1078–79, 90 L.Ed. 1252 (1946).

Historically, Bills of Attainder were directed against individuals who posed or were perceived to pose a threat to the regime. The penalty was death. Less drastic bills, imposing lesser penalties, were known as Bills of Pains and Penalties; these too are included within the Constitutional prohibition against Bills of Attainder. *See U.S. v. Brown, supra* 381 U.S. at 441, 442, 85 S.Ct. at 1711–12. By its very nature, the purpose of a Bill of Attainder is to invoke punishment of and against the party or class of parties named. Thus, the only parties who fall within the zone of interest sought to be protected by Art. 1, § 9, Cl. 3 of the Constitution are the individuals or class of individuals who are actually identified by the law which is alleged to be a Bill of Attainder.

In the instant case, § 2443 identifies only two parties, Toshiba Machine Co., Ltd. (Japan) and Kongsberg. Plaintiffs and cross-claimant are not in any way specified or identified by § 2443 and therefore cannot claim to be an attainted party under that law. Thus, the parties seeking relief, with respect to § 2443 do not fall within the zone of interest to be protected by the prohibition against Bills of Attainder, and consequently lack standing to raise that issue before this Court.

The Court turns next to the prudential considerations in order to determine whether plaintiffs are the proper proponents of the particular legal rights on which they base their suit. As has been noted above with respect to plaintiff's Bill of Attainder argument, the only relevant individual identified in § 2443 is Toshiba Machine Company Ltd. (Japan). Plaintiffs and cross-claimant Toshiba–America argue that § 2443 acts as a Bill of Attainder as to Toshiba (Japan) and here seek to assert the unconstitutionality of the provision on behalf of Toshiba (Japan).

A similar situation was recently presented in *Canfield Aviation Inc. v. National Transportation Safety Board,* 854 F.2d 745 (5th Cir.1988), in which the plaintiff, a corporation, asserted the unconstitutionality of an alleged Bill of Attainder directed at Reynold Crete, one of the corporation's officers. The Court declined to address this issue on the grounds that plaintiff lacked standing to assert it, despite plaintiff's claim that it had suffered an injury in fact. As stated by the Court, "[r]egardless of the possible merits of [plaintiff's] argument, however, it is inarguable that the constitutional rights being asserted here belong to Crete as an individual, not to Canfield, the corporation." *Id.* at 748. Because Crete did not lack the ability or the opportunity to assert his own rights the Court followed the principles stated in *Singleton, supra,* that federal courts should hesitate to resolve controversies on the basis of the rights of third persons. Accordingly, the Court held that the plaintiff lacked standing to raise an issue concerning Crete's constitutional rights.

Further, the cited section (§ 2443) is an embargo. It is unarguable that were § 2443 a general embargo against either a class of goods or the goods of a specific nation it would fall within the power of Congress under Art. I, Section 8, Cl. 3 to regulate commerce with foreign nations. Thus, § 2443 must be held constitutional *unless* it impermissibly contravenes some other section of the Constitution. Toshiba America and plaintiffs Arjay *et al.* argue that such other violated provision is the Bill of Attainder prohibition.

But the Court is neither free nor inclined to readily overturn a law of the Congress as unconstitutional nor to issue, as prayed for by plaintiff, an injunction against the President of the United States. Such confrontations must be avoided if possible.[4] And it is possible here.

---

**4.** "The exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, is therefore restricted to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate.

The exercise of the judicial power also affects relationships between the coequal arms of the National Government. The effect is, of course, most vivid when a federal court declares unconstitutional an act of the Legislative or Executive Branch." *Valley Forge Christian College v. Americans United for Separation of Church and*

The only arguable basis for establishing standing by Toshiba America or the American plaintiffs under the Article III test of a justiciable "case or controversy" arises from the cited Article I prohibition against Bills of Attainder. We hold that the only party with standing to bring a case or controversy under the Bill of Attainder provision is the specifically attainted party. None of the plaintiffs, nor cross-claimant Toshiba America are such attainted parties. The only attainted party, Toshiba Machine Company Ltd. (Japan) was before this Court and specifically declined to assert whatever rights it might have or have had and asked the Court to be dismissed for lack of jurisdiction. Given that Toshiba Japan did not wish to enter into the litigation or assert its rights its Motion for Dismissal was granted.

There remains therefore no one before this Court who is an attainted (specified) party who would have standing to raise the Bill of Attainder question.

Although plaintiffs once argued that § 2443 was also unconstitutional as an ex post facto law they appear to have abandoned that position. Given that *ex post facto* applies only to criminal penalties, and none are present here, that abandonment is appropriate.

Toshiba Machine Company America filed an eleventh hour supplemental brief with the Court on the issue of standing. TMCA cited a January 31, 1989 U.S. Treasury regulation, 12 C.F.R. § 12.142(a) which recites, in relevant part that products subject to the three year ban on importation include "products manufactured or produced by Toshiba [Machine Co., Japan] . . . or any other entity directly or indirectly owned or controlled by [Toshiba Machine Co., Japan]." But as it does not appear that plaintiffs Arjay *et al.* or cross-claimant Toshiba America "manufacture or produce" any products whatsoever, the newly issued regulations do nothing to confer standing on the parties before this Court.

Therefore, the defendants' Motion to Dismiss is granted and plaintiff's complaint, cross-claimant's cross-claim, and all other pending motions, are hereby dismissed.

State, Inc., et al., 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982).

"[R]epeated and essentially head-on confrontations between the life-tenured branch and the representative branches of government will not, in the long run, be beneficial to either." *Id.* at 474, 102 S.Ct. at 759 (*quoting U.S. v. Richardson,* 418 U.S. 166, 188, 94 S.Ct. 2940, 2952, 41 L.Ed. 2d 678 (1974)).